MEIGHAN v. EMIGRANT INDUSTRIAL SAVINGS BANK. (No. 7210.)

(Supreme Court, Appellate Division, First Department. May 14, 1915.)

1. BANKS AND BANKING ☞305—SAVINGS BANKS—PAYMENT OF DEPOSITS— PRODUCTION OF PASSBOOK.

Under the provision of the Banking Law † that no savings bank shall pay any deposit unless the passbook of the depositor shall be produced and the proper entry made therein at the time, the production of the passbook is not an arbitrary condition; and, where a savings bank had made no rule regulating payment, the book could not be produced, as it was authorized to do by the Banking Law, if a depositor showed a reasonable excuse for his failure to present his book when he sought to withdraw his money, he could recover the deposit without producing the book.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1177–1182; Dec. Dig. ☞305.]

2. BANKS AND BANKING ☞305—SAVINGS BANKS—PAYMENT OF DEPOSITS— PRODUCTION OF PASSBOOK.

The reasonableness of the depositor's excuse for not producing the passbook must be determined in the light of the purpose of the rule requiring the production of the book, which is to protect the bank against the payment of deposits to persons other than those entitled thereto.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1177–1182; Dec. Dig. ☞305.]

3. BANKS AND BANKING ☞305—SAVINGS BANKS—PAYMENT OF DEPOSITS— PRODUCTION OF PASSBOOK.

A savings bank depositor, while in Ireland with his wife, sent his passbook with a draft on the savings bank to the bank, and thereafter was committed to a lunatic asylum. While so confined a registered mail package from the bank, containing the book, was delivered to the depositor's

wife, who neither visited nor communicated with the depositor while in the asylum, and after he left it, he found the house where they had been living vacant, and could obtain no information concerning her whereabouts. The wife had relatives living near by, but the depositor did not inquire of them, but it did not appear that they could have given him any information. The bank received a communication from the wife, stating that the book was in her possession, and refused to pay the depositor without its production, but expressed no dissatisfaction as to the sufficiency of the depositor's search for his wife. *Held*, that the depositor showed a sufficient excuse for his failure to produce the book, and was entitled to recover the deposit without its production.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1177–1182; Dec. Dig. ☞305.]

Dowling and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Joseph Meighan against the Emigrant Industrial Savings Bank. From a judgment entered on a verdict in favor of plaintiff, and from an order denying its motion for new trial on the minutes, defendant appeals. Affirmed.

The facts were as follows: The plaintiff, then a resident of New York City, had an account with the defendant standing in his individual name. The account was subject to the defendant's by-laws, which contained this provision: "The bank shall not be liable or called on to make any payment without the presenting of the passbook at its counter, that the proper entry may be made in it." When the account was opened and when this action was commenced, the Banking Law provided that no savings bank shall pay any deposit unless the passbook of the depositor shall be produced and the proper entry made therein at the time of the transaction. It further provided that the trustees of savings banks might, in their by-laws, provide how payment should be made in case of loss of passbooks, or under other exceptional circumstances, where the books could be produced without loss or serious inconvenience to depositor, the right to make such payments to cease when the Superintendent of Banks should so direct. The by-laws of the defendant made no provision whatever for a payment without the production of the passbook.

In the summer of 1912, plaintiff, with Bridget, his wife, went to Dublin, Ireland, where they lived at No. 7 Malachy Road. While at this place plaintiff mailed to defendant his passbook, together with a draft on defendant for $50. Having received the book and draft, the defendant, on July 30, 1912, returned the book with a draft for the equivalent of $50 to defendant by registered mail, and on August 8, 1912, the package was delivered to plaintiff's wife, at No. 7 Malachy Road. In the latter part of July, 1912, plaintiff was committed to a lunatic asylum, where he was confined for five weeks, including the 8th day of August, 1912. On leaving the asylum, plaintiff inquired at the general post office in Dublin, and was told that the registered package sent by the defendant, and containing plaintiff's bank book, had been delivered to his wife as above recited. Plaintiff did not see his wife while he was in the asylum or after he left. After leaving the asylum, plaintiff went to No. 7 Malachy Road and found the house vacant. He inquired of neighbors concerning the whereabouts of his wife, but obtained no information. The wife had relatives living near Dublin, but plaintiff did not inquire for her of them. Subsequently plaintiff wrote to defendant, asking for a payment on account, and in reply was told he could draw no money without presenting the passbook, and that defendant had received a communication from plaintiff's wife stating that it was in her possession.

There was no evidence that the wife made any claim to the book adverse to plaintiff, and plaintiff testified that he had never assigned the book, or any interest therein. On returning to this country, plaintiff made demand on defendant for the amount remaining to his credit. He also informed defend-

ant, in substance, of the facts, showing his inability to produce the book, but his demand was refused, defendant taking the position that it would not pay without the book. Thereupon this action was commenced.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Richard O'Gorman, of New York City, for appellant.

Richard J. Donovan, of New York City, for respondent.

HOTCHKISS, J. [1, 2] The defendant does not contend that the provision of the Banking Law requiring the production of the passbook is an arbitrary condition that must, at all hazards, be complied with, but if it did, the contention could not be upheld. In Warhus v. Bowery Savings Bank, 21 N. Y. 543, it appeared that in pursuance of the provisions of the act incorporating the defendant, by which it was authorized to prescribe regulations for the withdrawal of moneys, the defendant had adopted a rule that "no person shall have the right to demand any part of this principal or interest without producing the original book, that such payment may be entered therein," and it was held that proof of the loss of the passbook, or inability to find it after proper search, excused its nonproduction and entitled the depositor to his money. But the plaintiff in that case having offered no proof whatever of the loss or destruction of the book or any proof to account for its nonproduction, a dismissal of the complaint was sustained. In the present case, defendant having made no rule regulating payment where, because of its loss or because of other exceptional circumstances the book could not be produced, the first inquiry must be whether the facts disclosed a reasonable excuse for plaintiff's failure to present his book when he sought to withdraw his money. The evident purpose of the rule requiring the production of the book is to protect the bank against the payment of deposits to other than those entitled thereto, and the reasonableness of the excuse for not producing the book must be determined in the light of this purpose. Had it been shown that the book was actually lost, a refusal to pay without its production would not have been justified. Mierke v. Jefferson County Savings Bank, 208 N. Y. 347, 101 N. E. 889, 46 L. R. A. (N. S.) 194, Ann. Cas. 1914D, 21.

[3] Is the situation changed because, although it is to be inferred that the book is in the possession of a certain identified individual (no ground for suspecting an adverse claim on his part appearing), the whereabouts of that person cannot, after reasonable search, be ascertained? I think not. Assuming that the delivery of the registered package by the Irish post office authorities to plaintiff's wife was justified, notwithstanding it was addressed to plaintiff himself, what presumption can follow, except that the wife received the package as plaintiff's agent and to hold for him? When after his release from the asylum plaintiff returned to the marital domicile and found it closed, and when after inquiry of those living in the neighborhood plaintiff was unable to ascertain the whereabouts of his wife, I think he had performed every duty that could be reasonably required, particularly in view of the fact that the uncertainty of his wife's whereabouts was

accentuated from the circumstance that she had neither visited nor communicated with him while he was in the asylum. In Palmer v. Providence Institution for Savings, 14 R. I. 68, 51 Am. Rep. 341, after the death of the depositor, plaintiff, his administrator, was unable to obtain the passbook from the depositor's family, who had taken possession of it after his death, which fact plaintiff communicated to the defendant, which refused to pay, but the court held plaintiff entitled to recover. There is nothing in the record before us to show, that if the plaintiff had made inquiry of them, the relatives of his wife, who lived near Dublin, could have given him any information of her whereabouts. The plaintiff testified that on several occasions he called at defendant's banking house and informed its deputy comptroller of all the facts concerning his search for his wife and his attempts to get possession of his book, but that he was told that no payment would be made without the book, and this was corroborated by the deputy comptroller, who said, "I told him where the passbook was, and we had information it was in the hands of his wife." On these facts the jury was justified in finding that, having adopted no rule or by-law regulating the conditions under which deposits might be withdrawn without producing the book, defendant stood out and refused to pay solely on this ground. If the defendant was dissatisfied with the sufficiency of the attempts plaintiff had made to get possession of the book, it should have said so, and although I do not mean to suggest that it would then have been plaintiff's duty to have pursued any further search, I think that, defendant having failed to make any objection on the ground of insufficient search at the time when demand was made upon it, and having apparently placed its refusal on the sole ground that the book was not produced and was in possession of plaintiff's wife, it is in no position now to claim that plaintiff's search for his wife was not as thorough as it might have been.

The judgment and order should be affirmed, with costs.

INGRAHAM, P. J., and LAUGHLIN, J., concur.

DOWLING, J. (dissenting). The account of the plaintiff was received by the defendant subject to the latter's by-laws, which were printed in the depositor's book, and which constituted part of the contract between the parties on which the deposit was received. Warhus v. Bowery Savings Bank, 21 N. Y. 543. One of these by-laws provided:

"The bank shall not be liable or called on to make any payment without the presenting of the passbook at its counter, that the proper entry may be made in it, nor shall it be liable for any deposit unless made at its counter during business hours."

The Warhus Case, just cited, held that there was nothing unreasonable in such a regulation, nor did it work a forfeiture of the depositor's money, and that if the depositor, when he wished to withdraw the money, could not do what the regulation of the defendant required, he must do the next best thing—account for the nonproduction of the passbook, and show its loss or destruction. The plaintiff herein has done neither. What he has shown is that the passbook, when returned

to him by mail by defendant, as instructed by him, was taken possession of by his wife, who presumably still retains the same. He has taken no legal steps to secure the return of this passbook. He left Ireland without any adequate effort to find his wife, to ascertain her whereabouts, or to regain possession of the book. This despite the fact that she had a brother and sister living in Ireland within a short distance of his then residence there, and from neither of them did he seek any information as to his wife's whereabouts. He returned to this country without any attempt to regain possession of his passbook, though he knew from the bank's correspondence with him that they stood upon their contract and would not pay him without the production of the book. Mierke v. Jefferson County Savings Bank, 208 N. Y. 347, 101 N. E. 889, 46 L. R. A. (N. S.) 194, Ann. Cas. 1914D, 21, held that where a bank had failed to make a by-law providing for the method of making payments in cases of the loss of a passbook, or other exceptional cases, where the book could not be produced without loss or serious inconvenience to depositor (Banking Law [Consol. Laws, c. 2] § 143) the defendant could not insist on the giving of an indemnity bond, but the only question was whether plaintiff had given satisfactory evidence of the loss of the book. Here the record affirmatively shows that the book is in existence; it has not been lost, but to plaintiff's knowledge is in the possession of a third party; he has taken no means to regain such possession; and therefore, it seems to me, until plaintiff has exhausted every reasonable means of obtaining possession of his passbook, or has made the party holding it a party defendant in his action, that he cannot recover against the depositary in the face of the express terms of the contract between them, which have been held not to be unreasonable. I, therefore, believe that the judgment appealed from should be reversed, with costs, and judgment given in favor of defendant, with costs.

McLAUGHLIN, J., concurs.